# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| STEPHEN ROBERT HERRING and MICHAEL HERRING, <br> *Plaintiffs,* <br><br> v. <br><br> EILEEN M. CAMPBELL, As Plan Administrator of Marathon Oil Company Thrift Plan, <br> *Defendant.* <br><br>———————————————— <br><br> EILEEN M. CAMPBELL, As Plan Administrator of Marathon Oil Company Thrift Plan, <br> *Third-Party Plaintiff,* <br><br> v. <br><br> GAIL CHRISTIN HUNTER-SANCHEZ, JERRY PAUL HUNTER, RICHARD SCOTT HUNTER, MICHAEL DAVID HUNTER, PERCY DALE HARDY, JR., and MARK VALENTINE HARDY, <br> *Third-Party Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2-09-cv-30-TJW |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant and Third-Party Plaintiff Eileen M. Campbell's Motion for Summary Judgment [Dkt. No. 22] and Third-Party Defendants' Motion for Summary Judgment [Dkt. No. 25]. Having considered the parties briefs, the Court is of the opinion that the motions should be DENIED.

**I.     Background**

Plaintiffs Stephen Robert Herring and Michael Herring ("the Herrings") brought this action

to recover proceeds from John Wayne Hunter's ("Mr. Hunter") Marathon Oil Company Thrift Plan ("the Plan") retirement account, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Mr. Hunter named his wife, Joyce Mae Hunter ("Mrs. Hunter"), as the sole beneficiary of his retirement account. Mrs. Hunter predeceased Mr. Hunter in 2004. When Mr. Hunter died in 2005, he had not designated any other beneficiaries. Therefore, there were no named beneficiaries for Mr. Hunter's retirement account.

When a participant in the Plan dies without designated beneficiaries, the Plan has default beneficiary rules to identify the beneficiary class. "[T]he member's account(s) will be paid to the person or persons comprising the first surviving classes of the [following] classes . . .: A. The member's surviving spouse[;] B. The member's surviving children[;] C. The member's surviving parents[;] D. The member's surviving brothers and sisters[;] E. The executor or administrator of the member's estate." Marathon Oil Company Thrift Plan Summary, Exhibit 5 to Campbell Motion, at 17. The parties do not dispute that Mr. Hunter had no surviving spouse or surviving parents. The parties dispute whether Mr. Hunter had surviving children.

The Plan does not define "children." As administrator of the Plan, Ms. Campbell "determined that 'children' . . . means biological and/or legally adopted children, not stepchildren." Affidavit of Eileen M. Campbell at 2. Under her interpretation of the Plan, Ms. Campbell found that the Herrings were not Mr. Hunter's children. She therefore paid the proceeds of the retirement account to the members of the fourth default beneficiary class, Mr. Hunter's surviving siblings.

The Herrings are the biological children of Mrs. Hunter and Ronnie Herring. The Herrings assert that they do not know Ronnie Herring and have no relationship with him. Shortly after the

Herrings' birth, Mrs. Hunter married Mr. Hunter. Mr. Hunter brought the Herrings into his home and helped to raise them. Mr. and Mrs. Hunter had no other children. The Herrings allege that they learned that Mr. Hunter was not their biological father when they were in high school. Mr. Herring died testate and left his entire estate "to [his] beloved sons, Stephen Robert Herring and Michael Herring." Will of John Wayne Hunter at 1.

The Herrings contend that they are the "equitably adopted" children of Mr. Hunter and are therefore the beneficiaries of Mr. Hunter's retirement account as members of the class of surviving children. According to Ms. Campbell, Mr. Hunter had no surviving children and the proceeds of the account were properly paid to Third Party Defendants. Ms. Campbell further argues that even if the Court finds that the Herrings are equitably adopted, ERISA has preempted the Texas doctrine of equitable adoption. Third Party Defendants include Mr. Hunter's siblings and half-siblings, who also contend that Mr. Hunter had no surviving children.

## II.     Legal Standard

Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the non-movant must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The non-movant must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Wise v. E.I. DuPont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995); *Holland v. City of Houston*, 41 F. Supp. 2d 678, 687 (S.D. Tex. 1999).

In an appeal from a denial of benefits, when an administrator is acting under its discretionary authority, a court reviews the administrator's decision under the abuse of discretion standard.

*Met. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 2347–48 (2008) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948 (1989)); *Cooper v. Hewlett-Packard Co.*, 592 F.3d 646, 651–52 (5th Cir. 2009). Courts use a two-step process to review under the abuse of discretion standard. First, the court determines whether an interpretation is legally correct. *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 258 (5th Cir. 2009). Only if the Court finds that the administrator's decision is legally incorrect does the Court review for an abuse of discretion. *Id.* The three-part test for whether an interpretation is legally correct advises the reviewing court to consider, "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan. . . . The most important factor in this three-part analysis is whether the administrator's interpretation was consistent with a fair reading of the plan." *Id.* at 258 (quoting *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312–3 (5th Cir. 2008)) (internal citation and footnote omitted).

### III. Analysis

The Court reviews Ms. Campbell's decision under the abuse of discretion standard because the Plan expressly grants the administrator discretionary authority to define the term "children." *See* Marathon Oil Company Thrift Plan at 47 ("In determining the eligibility of members and other individuals for benefits and in construing the Plan's terms, the Plan Administrator has the power to exercise their discretion in the construction of doubtful, disputed, or ambiguous terms or provisions of the Plan, in cases where the Plan instrument is silent . . . .").

A fully developed record is necessary for the Court to determine whether the Ms. Campbell's decision is legally correct. The Court is not convinced that the administrator's refusal to consider the Herrings' background as the children of Mr. Hunter is consistent with a fair reading of the plan.

4

"'[When] one . . . takes a child into his home as his own, receiving the benefits accruing to him on account of that relation, assumes the duties and burdens incident thereto, and . . . where justice and good faith require it [,] the court will enforce the rights incident to the statutory relation of adoption.'" *Reed on Behalf of Reed v. Chater*, 925 F.Supp. 466, 467–68 (quoting *Cubley v. Barbee*, 123 Tex. 411, 73 S.W.2d 72, 81 (1934)) (finding that an equitably adopted son was entitled to Social Security benefits). Whether the Herrings are Mr. Hunter's children for the purposes of identifying beneficiaries under the Plan is a material issue of fact that the Court must resolve before it can undertake an analysis of whether the administrator's decision was legally correct. The Court will conduct a bench trial to determine whether the Herrings have been equitably adopted by Mr. Hunter.

Movants argue that even if the Court finds that the Herrings have been equitably adopted after a bench trial, the Court should still grant the motions because ERISA has preempted the equitable adoption doctrine. Movants rely upon *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S.Ct. 1322 (2001), for the proposition that ERISA preempts state law "to the extent it purports to override or control the terms of an ERISA-governed plan with respect to the determination of beneficiaries." Dkt. No. 22 at 26. In *Egelhoff*, the Supreme Court found that a Washington statute that automatically revoked spousal beneficiary designations upon divorce was preempted by ERISA because, under that law, "administrators must pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents." *Egelhoff*, 121 S.Ct. at 1327.

*Egelhoff* is distinguishable because at issue here is a matter of interpretation of the Plan's terms, not a statute that circumvents the plan participant's express, valid beneficiary designations. This is not a case under which "'where compliance with both federal and state regulations is a

5

physical impossibility, . . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Boggs v. Boggs*, 520 U.S. 833, 117 S.Ct. 1754, 1762 (1997). Moreover, the Supreme Court has recognized that "[t] whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 808 (1979) (quoting *In re Burns*, 136 U.S. 586, 593–94 (1890)). "State family and family-property law must do 'major damage' to 'clear and substantial federal interests before the Supremacy Clause will demand that state law be overridden." *Id.* (quoting *United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 507 (1966)).

The equitable adoption doctrine does not impede Congress' objectives for the uniform administration of the plan. ERISA and the equitable adoption doctrine are not inconsistent with each other. Assuming that the Court finds Mr. Hunter equitably adopted the Herrings, the Herrings are not suddenly transformed into beneficiaries chosen by the state law. The Plan documents specify "surviving children" and state law simply informs the administrator who those surviving children are. The Court does not agree with Movants that the Texas' equitable adoption doctrine does major damage to substantial federal interests.

## IV. Conclusion

The Court finds that material issues of fact remain. The parties are instructed to tailor their presentation of evidence such that it assists the Court in resolving the issue of whether Mr. Hunter has equitably adopted the Herrings. The Court DENIES the motions for summary judgment.

It is SO ORDERED.

SIGNED this 30th day of June, 2010.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE